[Civ. No. 997.  First Appellate District.—July 10, 1912.]

ACME LUMBER COMPANY, a Corporation, Appellant, v. M. A. WESSLING, Respondent, and JOSEPH FARIS, Codefendant.

MECHANIC'S LIEN — IMPROVEMENT OF STABLE OCCUPIED BY TENANT— VALIDITY OF UNRECORDED CONTRACTS—DISTINCT SMALL CONTRACTS AGGREGATING OVER $1,000.—In an action to foreclose a mechanic's lien upon·a stable belonging to the owner, but occupied by a tenant, who made an individual contract of $232 for its improvement, and made other separate and distinct contracts for work to improve the same, each of which was less than $1,000, the fact that the aggregate sum of the improvements was in excess of $1,000 is immaterial, and did not require the recordation of the original contract, nor of any other distinct contract, which was incident to the original contract, for a small additional sum in improving the stable.

ID.—LIABILITY OF OWNER OF STABLE IN FORECLOSURE OF LIEN—KNOWL-EDGE OF IMPROVEMENTS—FAILURE TO POST NOTICE.—In the action to foreclose the lien as against the owner of the stable, who was present on the premises and saw all of the work going on for its improvement, but who neither pleaded nor proved that any notice of nonresponsibility was posted as permitted in section 1185 of the Code of Civil Procedure, both the stable and the land on which it is situated are subject to foreclosure both as against the owner and the tenant.

ID.—IMPROPER NONSUIT ON MOTION OF OWNER—INVALIDITY OF CON-TRACTS — VARIANCE BETWEEN PROOF AND PLEADING AS TO CONDI-

TIONS OF CONTRACT.—It is held that the claimant of the lien was improperly nonsuited on motion of the owner of the stable, either on the ground of the invalidity of the contracts as against the owner or on the ground of a fatal variance between the contracts shown by the evidence and the conditions of contract stated in the claim of lien as set out in the complaint.

ID.—CONSTRUCTION OF CODE AS TO CLAIM OF LIEN—"CONDITIONS OF CONTRACT."—The requirement of section 1187 of the Code of Civil Procedure, as it existed when the claim of lien in this case was filed, that the claim of lien shall contain "a statement of the terms, time given and conditions of his contract," does not mean that the fact that the work was performed under several contracts is a circumstance which must be stated as a "condition" of the contract. The "conditions" of a contract which the statute contemplates and requires to be stated are those provisions which enter into and form part of the contract and make it a binding contract.

ID.—EFFECT OF STATUTE UPON VALIDITY OF CLAIM—STATEMENT OF SEPARATE CONTRACTS UNNECESSARY.—Under the statute, it is not necessary to the validity of the claim of lien that it should set forth that the demand was based upon more than one contract, and then segregate and separately state the amount of each, even though the evidence adduced in support of the lien shows that the work for which the lien is claimed was performed upon separate and distinct structures under separate and distinct contracts.

ID.—SUBSTANTIAL TRUTH OF CLAIM OF MARKET PRICE OF ALL WORK AND LABOR PERFORMED.—The fact that the evidence shows that the shed was constructed for the agreed price of $232, while the claim of lien stated that all work and labor and materials supplied were to be on the basis of their reasonable value, did not, under all of the evidence, constitute a fatal or any variance, where there was evidence that the prices charged for such piece of work, including the construction of the shed, were the prevailing market prices at the time for labor and materials; from which it results that the claim of lien was substantially true, and not at variance with the evidence.

ID.—VARIANCE BETWEEN PLEADING AND PROOF DISTINCT FROM VARIANCE IN CLAIM OF LIEN—QUESTION OF PREJUDICE.—A variance between the pleading of one contract in the complaint and the proof of several contracts in the evidence is not governed by the same rules as a variance between the claim of lien and the proof, which requires a substantially true statement. But a mere variance between the complaint and the proof is not material, unless the adverse party has been misled thereby to his prejudice. It is held that no good reason appears to show that the defendant owner was misled to her prejudice by such variance.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a motion for a new trial. George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Pillsbury, Madison & Sutro, for Appellant.

Jacob Samuels, and Oscar Samuels, for Respondent.

LENNON, P. J.—This is an appeal by the plaintiff from an order denying a new trial in an action to foreclose a mechanic's lien.

The claim of lien was made and filed by Hubbs & Lear as original contractors and then assigned to the plaintiff. The contract upon which the claim of lien is founded is stated in the claim of lien to be, in substance, as follows:

Hubbs & Lear agreed with the defendant Faris to alter and repair a certain building or buildings on certain premises reputed to be owned by the defendant Wessling. By the terms of the contract, as stated in the claim of lien, "said Hobbs & Lear were to alter, reconstruct and repair said building or buildings as directed by said Joseph Faris, furnish all the labor and materials necessary therefor, and were to be paid the reasonable value thereof. No time of payment was agreed upon between the said Hubbs & Lear and the said Joseph Faris, and no time was agreed upon when said work should be completed."

It was alleged in the plaintiff's complaint and in the claim of lien that the reasonable value of the labor and material furnished and supplied in the performance of the contract was the sum of $1,915.81, of which the sum of $562.25, and no more, had been paid. The complaint and claim of lien are silent as to whether or not the contract stated therein was in writing and recorded.

The evidence adduced at the trial in support of the claim of lien was to the effect that in the month of June, 1906, the defendant Faris entered into an oral contract with the lien claimants, Hubbs & Lear, whereby they agreed to construct a shed for the stated price of $232, upon a lot of land used and occupied by Faris as a tenant of the defendant Wessling.

This was the only contract entered into at this time by Hubbs & Lear with the defendant Faris. Work upon the shed was commenced and completed pursuant to this contract. Prior to and at the time of the execution of the contract and the commencement of the work thereunder, Faris, as a tenant of the defendant Wessling, was occupying a stable building situated upon the same lot of land upon which the shed was erected. A week or more after the execution of the contract for the construction of the shed, and while work thereunder was progressing, Hubbs & Lear entered into a second separate and distinct verbal contract with the defendant Faris to tear out the old stalls in the adjacent stable and replace them with new stalls. No other or additional work in or about the stable was agreed upon or mentioned at this time. The price agreed upon for this particular piece of work was the reasonable market value of the labor and material. Thereafter, from time to time, and as a result of several separate and distinct agreements, further alterations of the stable were made by Hubbs & Lear, the reasonable market value thereof being agreed upon as the price of each piece of work in every instance. The work performed upon the stable was not done in accordance with any preconceived plans and specifications, but was performed from time to time as ordered and directed by the defendant Faris, and in its entirety consisted of remodeling the attic, reconstructing the stalls, floors and mangers of the stable, and installing of harness and robe rooms and an office, and the remodeling of the entire front of the stable. The employment to install the harness-room and office was made a month after the first employment to tear out the old stalls.

Finally, when the shed originally contracted for and the reconstruction of the stable were both completed, the defendant Faris directed the removal of a partition wall which was standing between the shed and the stable, and when this was done, both structures, for all practical purposes, constituted one building.

The reasonable market value of the labor performed and material supplied in the erection of the shed and the reconstruction of the stable was shown to be the amount stated in the claim of lien, $1,915.81.

It was further shown in evidence that the defendant Wessling "was present on the premises and saw all the work going on," and it was not pleaded or pretended in her behalf that she had posted the notice of nonresponsibility permitted by section 1192 of the Code of Civil Procedure, which, under the provisions of section 1185 of the same code, if the contract had been reduced to writing and recorded, would have relieved the land from the burden of the lien for the improvements made thereon at the direction of her tenant Faris.

Although duly served with process, the defendant Faris did not appear in the case, and accordingly default was entered against him.

Plaintiff was nonsuited upon motion of the defendant Wessling upon the grounds, (1) "that the contract as set out in plaintiff's complaint, in the notice of lien and as sought to be proven, is void for want of recordation, and that by reason thereof no cause of action lies against the defendant Wessling; (2) that the proof adduced with respect to said alleged contract demonstrated that there were at least two, if not more, separable contracts, and that by reason thereof there was a fatal variance between said proof and the notice of lien and contract as set out in the complaint."

But one point is presented and discussed in support of the appeal, and that involves the question as to whether or not the lower court was justified in granting a nonsuit upon either or both of the grounds stated.

We are of the opinion that the evidence adduced at the trial in support of the claim or lien did not warrant a nonsuit upon either ground.

Counsel on both sides have devoted several pages of their respective briefs to a discussion of the question as to whether or not the contract stated in the claim of lien was void and incapable of sustaining the lien because not expressed in writing and recorded.

Upon this phase of the case it is one of plaintiff's contentions that all of the work performed by Hubbs & Lear was done under the first contract to construct the shed, and that the several items of labor and material supplied in the subsequent alteration of the stable were but incidents of the initial contract which must be considered as extra work, and that inasmuch as the original contract was for the sum of $232,

it cannot be held to be invalid because it was not expressed in writing and recorded, notwithstanding that the aggregate amount of the cost of the extras was far in excess of $1,000.

We are not prepared to say whether or not such a contract would ordinarily fall within the purview of section 1183 of the Code of Civil Procedure, which requires that a building contract must be expressed in writing and recorded when the amount to be paid thereunder exceeds the sum of $1,000. However that may be, no such contract or question confronts us under the facts of this case, for, as we have shown and as is conceded by counsel for the defendant Wessling, it was clearly and without conflict established by the evidence that the initial contract was a "definite contract at a definite price" for a distinct piece of work, which, at its inception, had no apparent or necessary connection with the work subsequently performed under several other separate and distinct contracts for the reconstruction of the stable. This being so, it is obvious that the initial contract for the construction of the shed and the several subsequent separate contracts for the reconstruction of the stable cannot be joined together and treated as one individual contract. They must be treated as separate and distinct contracts for amounts less than $1,000 (*Clark* v. *Beyrle,* 160 Cal. 306, [116 Pac. 739]), and when so considered, it is evident that it was not necessary to their validity that they should have been expressed in writing and recorded.

This view of the evidence brings us to a consideration of the alleged variance between the contract stated in the claim of lien and the contract, or rather contracts, shown by the evidence to have been actually made.

It is the contention of the defendant Wessling that the claim of lien is fatally at variance with the evidence in this, that the claim of lien purports to be founded upon a single contract for the alteration of an existing building, whereas the evidence shows that the labor and materials for which the lien is claimed were actually supplied under several separate and distinct contracts. In other words, it is the contention of the defendant Wessling that the claim of lien, to be valid, should have been framed upon the theory that the work and labor performed and supplied under several distinct contracts for separate and distinct amounts, and that those con-

tracts and their amounts should have been segregated and separately stated in the claim of lien.

Section 1187 of the Code of Civil Procedure, as it existed when the claim of lien in the case at bar was filed, required that a claim of lien by an original contractor, to be valid, should contain (1) a statement of his demand, less all just credits and setoffs; (2) the name of the owner or reputed owner, if known; (3) the name of the person by whom he was employed or to whom he furnished the materials; (4) a statement of the terms, time given and conditions of his contract; and (5) a description of the property to be charged with the lien sufficient for identification.

The requirement of the statute that the claim of lien shall state the "conditions" of the contract does not mean that the fact that the work was performed under several contracts is a circumstance which must be stated as a "condition" of the contract. The "conditions" of a contract which the statute contemplates and requires to be stated are those provisions which enter into and form a part of the contract and are essential to make it a binding contract.

The creation of a mechanic's lien is statutory, and in order to constitute a valid lien, it is necessary only to do the things which the statute directs shall be done, and, in our opinion, the claim of lien, in all of its essential particulars, conforms to every requirement of the statute. It contains a description of the property to be charged by the lien; a statement of the demand upon which the lien is founded, less credits and offsets; the name of the reputed owner; the name of the person by whom the contractor was employed, and to whom the labor and materials were furnished, and, finally, it states "the terms, time given and conditions of the contract."

This is all that the statute requires, and therefore we think it was not necessary to the validity of the claim of lien that it should set forth that the demand was based upon more than one contract and then segregate and separately state the amount of each, even though the evidence adduced in support of the lien shows that the work and labor for which the lien is claimed was performed upon separate and distinct structures under separate and distinct contracts. (*Kritzer* v.

*Tracy Engineering Co.,* 16 Cal. App. 287, [116 Pac. 700];
Boisot on Mechanics' Liens, sec. 408.)

The fact that the evidence disclosed that the shed was con-
structed for the agreed price of $232, while the claim of lien
stated that all of the work performed and materials supplied
were to be paid for on the basis of their reasonable value did
not, under all of the evidence, constitute a fatal or any
variance.   The action was brought to enforce a lien for the
reasonable value of the entire work and materials, and as
there was evidence to the effect that the prices charged for
each piece of work, including the construction of the shed,
were "the prevailing market prices at the time for labor
and materials," it results that the claim of lien was substan-
tially true and not at variance with the evidence.   (*Star Mill
& L. Co.* v. *Porter,* 4 Cal. App. 470, [88 Pac. 497]; *Lucas*
v. *Rea,* 10 Cal. App. 641, [102 Pac. 822].)

It may be conceded that there is a variance between the
pleadings and the proof to the extent that the complaint ap-
parently proceeds upon the theory that the claim of lien was
founded upon a single contract, while the evidence showed
that in fact the lien was founded upon several separate con-
tracts.   A variance between the pleadings and the proof, how-
ever, is not governed by the same strict rules which apply to
a variance between the claim of lien and the proof.   The
claim of lien must contain a true statement of the facts re-
quired by the statute and unless so stated the variance is
fatal; but a variance between the pleading and proof is not
material unless the adverse party has been thereby misled to
his prejudice.   (*Santa Monica etc.* v. *Hege,* 119 Cal. 376, [51
Pac. 555]; *Star Mill & L. Co.* v. *Porter,* 4 Cal. App. 470, [88
Pac. 497]; Code Civ. Proc., sec. 469.)

No good reason has been advanced for the claim that the
defendant was prejudiced by the variance between the plead-
ings and the proof in the present case.   The defendant was
not thereby prevented from setting up and availing herself
of any defense which she may have had to the action.   The
action was for the reasonable value of the labor and materials
supplied under the contract as pleaded, and inasmuch as the
several contracts shown in evidence were identical in sub-
stance and effect with "the terms, time given and conditions"
of the pleaded contract, we are unable to perceive how the

defendant could have been misled to her prejudice by the variance. (*Ehlers* v. *Wannack Bros.,* 118 Cal. 310, 314, [50 Pac. 433]; *Hartley* v. *Murtha,* 5 App. Div. 408, [39 N. Y. Supp. 212]; *Higgins* v. *Newtown etc. R. R. Co.,* 66 N. Y. 604; *Farron* v. *Sherwood,* 17 N. Y. 227; *Castagnino* v. *Balletta,* 82 Cal. 250–259, [23 Pac. 127].)

The order appealed from is reversed and the cause remanded for a new trial.

Hall, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 7, 1912.