[Civ. No. 1426.    Third Appellate District.—August 14, 1916.]

## JOHN M. BOSCUS et al., Copartners, Respondents, v. CHARLES H. WALDMANN et al., Appellants.

MECHANIC'S LIEN—FORECLOSURE—PLEADING—DATE OF COMPLETION OF BUILDING—SUFFICIENCY OF COMPLAINT.—In an action to foreclose a mechanic's lien, an allegation that the building was completed "on or about" a specified date, which date was less than thirty days before the alleged date of the filing of the claim of lien, is sufficient to warrant proof of the exact date of completion.

ID.—COMPLETION OF CONTRACT—SUFFICIENCY OF AVERMENT.—An allegation in such an action that the building was completed according to the terms of the contract sufficiently shows that the contract was completed.

ID.—BUILDING CONTRACT — OMISSION TO FILE BOND — LIABILITY OF OWNER.—Under section 1183 of the Code of Civil Procedure, as amended in 1911, it is the duty of the owner to exact from the contractor a bond and file the same in the office of the county recorder, if he would restrict his liability to laborers, materialmen, or subcontractors for their claims to the contract price, and where he fails to make such exaction, there is then imposed upon him the penalty of paying all liens to the extent of the value of the work done and materials furnished.

ID.—COMPLETION OF BUILDING BY OCCUPATION — OMISSION TO FILE NOTICE—ESTOPPEL.—The owner of a building is estopped from claiming that the lien of a claimant other than the original contractor was not filed within thirty days after occupation of the building, where no notice of such occupation was filed, as the requirement of section 1187 of the Code of Civil Procedure as to the filing of notice of completion applies as well to the statutory completion of a building by occupation, acceptance, or cessation of labor, as to actual completion.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Marcel E. Cerf, Judge.

The facts are stated in the opinion of the court.

Alexander D. Keyes, for Appellants.

A. P. Dessouslavy, and P. A. Bergerot, for Respondents.

HART, J.—This is an action of foreclosure under the mechanic's lien law.

On the eleventh day of April, 1912, the appellants, the Waldmanns, and the defendant, Marcuse, entered into an agreement in writing whereby the latter agreed to erect upon certain real property of the first named parties, situated in the city of San Francisco, a three-story frame building for the sum of $18,915, which sum was to be paid in certain specified installments at specified times, the last installment ($4,728.75) being made payable thirty-five days after the completion of said building. Said contract was filed for record in the office of the county recorder of the city and county of San Francisco on said eleventh day of April, 1912, but there was not filed with said contract before the work was commenced, or at any other time, the bond provided by section 1183 of the Code of Civil Procedure, or any bond whatever.

Immediately after the eleventh day of April, 1912, the defendant, Felix Marcuse, commenced the erection of said building upon the real property described in the complaint, in pursuance of the terms of said contract between him and the Waldmanns, and the complaint alleges that he completed the same "on or about October 26, 1912; that no notice of the completion of said building or contract was ever filed in the office of the county recorder of said city and county of San Francisco; that all the terms and conditions of said contract to be by said Felix Marcuse kept and performed have been by him duly kept and performed." It is averred that of the contract price for said building not more than the sum of ten thousand dollars has been paid by the Waldmanns to said Marcuse, and that "there ever since has remained and still remains due and unpaid from defendants [the Waldmanns] . . . to said Felix Marcuse, under said contract, and for said extra work and materials, a sum exceeding $10,000.00."

On the sixth day of May, 1912, said Marcuse, as such contractor, entered into an agreement with the plaintiffs by which the latter undertook and promised to do all the plumbing work for said building and to install the steam-heating plant and the radiators therein, in accordance with the plans and specifications adopted by the Waldmanns and said Marcuse, said plans and specifications being attached to and forming a part of the contract for the erection of the building; that plaintiffs by said agreement agreed to furnish all the materials and necessary labor, to commence said work at once, to prosecute the same without delay, and to have said work finished

as soon as possible; that said Marcuse agreed to pay the plaintiffs therefor $2,190, as follows: seventy-five per cent of the work done as the same should progress, and the remaining twenty-five per cent thirty-five days after the completion of the building.

It is alleged that, during the course of the erection of the building, the plaintiffs, at the request of said Marcuse, performed certain extra work and furnished certain extra materials. The various and several items of extra work and materials so performed and furnished are separately set out and described in the complaint, and the total amount thereof, stated in money, is $315.65. There are eleven of these items of extra work performed and extra materials furnished, and the complaint alleges that as to the first six items of such extras in the order in which they are set forth in that pleading, the prices therefor were fixed and agreed upon between plaintiffs and the said Marcuse; that as to the remaining five items thereof, no price was fixed or agreed upon for the same, but that the amounts claimed for the said last five items constitute the reasonable value thereof. It is alleged that no time within which said extra work was to be done was fixed or agreed upon, except that it was agreed that the same was to be done during the course of the erection of the building and as soon as possible, and that no time was fixed for the payment to the plaintiffs for said extra work; "that plaintiffs have further performed all the conditions of said agreement of May 6, 1912, to be by them performed; that said extra work was agreed to be done and was actually done, and that said extra materials were furnished to be used and were actually used in the construction of said building." It is further averred that all said extra work was done and the extra materials were furnished by the plaintiffs upon the order of said Marcuse and with the consent of the said defendants, Charles H. and Nellie V. Waldmann; "that the said price of $2,190 is and was the reasonable value of the work provided by the said agreement of May 6, 1912, to be done by plaintiffs."

It is alleged that the sum of $750 only has been paid on the price fixed in the agreement of May 6, 1912, and that nothing has been paid the plaintiffs on account of the extras aforesaid, and that, with the sum due on account of said extras added to the balance remaining unpaid and due under the

said written agreement of May 6, 1912, there is now due the plaintiffs from the appellants the total sum of $1,755.65.

The complaint is in two counts. The first alleges that the plaintiffs on the nineteenth day of November, 1912 (admitted by all the parties to have been the 20th instead of the 19th of November as alleged), filed their claim of lien, duly verified, in the office of the county recorder of the city and county of San Francisco. In the second count it is alleged: ''That, on November 30, 1912, defendants, Charles H. Waldmann and Nellie V. Waldmann, filed for record in the office of the county recorder of said city and county of San Francisco their notice wherein it was stated that a cessation of labor on said building had occurred October 26, 1912, and that, on November 25, 1912, there had been a cessation of labor for thirty days; that on December 10, 1912, plaintiffs, for the purpose of securing a lien for the amount due them as aforesaid, filed in said recorder's office their claim of lien, duly verified by the oath of John M. Boscus, one of said plaintiffs,'' etc.

A demurrer on both general and special grounds interposed by the defendants Waldmann was overruled, and said defendants thereupon answered the complaint specifically denying all the averments of the same, with the exception, however, of paragraph VI thereof, relating to the extra work done and the extra materials furnished by the plaintiffs, and as to said extras they admitted that they were done and furnished by the plaintiffs, but, it is alleged, upon an express agreement that there would be no extra charges therefor, some of them merely involving the correction of work which was called for by the building contract but which was defectively executed.

As separate and distinct defenses the answer in substance alleges: 1. That the plaintiffs ceased to labor and ceased to furnish materials in the construction of said building prior to the eighth day of October, 1912, and that the claim of lien set forth in each of the causes of action declared upon was filed for record more than thirty days after the plaintiffs ceased to labor and ceased to furnish materials to be used in the construction of said building; 2. That the defendants Waldmann, as owners, began the occupation and use of said building on the seventeenth day of October, 1912, ''and that the claims of lien of the said plaintiffs were filed more than thirty days after such occupation and use commenced, to-wit,

on the 20th day of November, 1912, and on the 10th day of November, 1912, respectively, and were, therefore, filed for record after the time allowed by law and these defendants allege that such occupation and use by these defendants as such owners was open, notorious and continuous.''

Finally, answering both causes of action relied upon by the plaintiffs, the answer points out the requirements as to plumbing prescribed by the specifications, and then charges that the plaintiffs failed to comply with those requirements in a number of specifically mentioned material particulars.

The court's findings are in substance as follows: That the building, except as to certain trivial imperfections, involving items, aggregating, in money, the sum of $17, for which credit was allowed the appellants, was completed by Marcuse ''on or about October 26, 1912, and subsequent to October 20, 1912''; that, barring the trivial imperfection referred to in the construction of said building, all the terms and conditions of the contract to be by said Marcuse kept and performed have been by him duly kept and performed; ''that ever since on or about October 20, 1912, there remained, and now remains, due and unpaid from defendants Charles H. Waldmann and Nellie V. Waldmann to said Marcuse under said contract a sum exceeding $6,500.'' It is further found that all the terms of the contract of May 6, 1912, between Marcuse, as agent of the defendants, and the plaintiffs, whereby the latter were to do the plumbing work in and upon said building, and provide the labor and materials therefor, were duly performed by the plaintiffs, and that the latter performed the extra work and furnished the extra materials alleged in the complaint and above referred to, the said agreement of May 6, 1912, and the extra work all being executed and performed according to the specifications forming part of the building contract. It is also found ''that, on October 17, 1912, defendants Charles H. Waldmann and Nellie V. Waldmann entered into, and ever since have been in, the actual and exclusive use and occupation of said building.''

It was alleged in the answer and, as seen, admitted to be true by counsel for both parties, that the first claim of lien by the plaintiffs was filed on the twentieth day of November, 1912, and not on the nineteenth day of November, 1912, as the complaint alleges.

It was also admitted by the appellants that no notice of completion of the building was ever filed by them, but that (so the plaintiffs allege and admit) a notice of cessation of labor was filed on November 30, 1912, stating that, on November 25, 1912, there had been a cessation of labor for thirty days.

It is alleged by the complaint and not denied by the answer that the bond mentioned in section 1183 of the Code of Civil Procedure was not filed with the original contract in the office of the county recorder, and thus the failure to file such bond was admitted.

Upon the findings and the admissions mentioned the court entered its decree, awarding the plaintiff the sum of $1,738.65, or the sum of $1,755.65 minus the said sum of $17 allowed for the "trivial imperfection," decreed that the plaintiffs were entitled to a lien on the real property described in the complaint and the building thereon and a foreclosure thereof, and a sale of said property at public auction to satisfy their claim.

The Waldmanns have appealed from said judgment under the alternative method.

The findings and the judgment are, as is obvious, based upon the first count of the complaint—that is, the decree, in accordance with the findings, adjudged the plaintiffs to be entitled to the lien and the benefits thereof filed on the twentieth day of November, 1912, upon the theory that the building was completed on the twenty-sixth day of October, 1912.

The contract between the plaintiffs and the original contractor, Marcuse, was made and filed and the work performed and the materials furnished thereunder after the existing law providing for the enforcement of mechanics' and laborers' liens was passed by the legislature of 1911, and hence by the provisions of that law must the questions presented by this appeal be tested.

The complaint, which is not to be indorsed as a perfect pleading in a case of this character, is nevertheless sufficient, and states a cause of action in the first count, upon which the judgment is based. We shall not consider all the objections to which it is urged that it is amenable. One of these objections may be noticed, however. It is that the allegation that the building was completed according to the terms of the contract "on or about October 26, 1912," and that the claim of

lien was filed on the nineteenth day of November, 1912, is too indefinite, and is not equivalent to the statement that completion took place within thirty days before November 19, 1912. (Citing *Cohn* v. *Wright,* 89 Cal. 86, [26 Pac. 643].) The case cited has reference particularly to a finding in the criticised language of the complaint. We think, however, that the language may and should be held sufficient in a complaint in a case of this character to warrant proof of the exact date, and that no substantial injury to the appellants could have followed from the ruling on the demurrer, so far as that language of the pleading is concerned. It is further insisted that the complaint was defective, in that it alleged that the *building* rather than the *contract* was completed. The complaint, as we have seen, declares that the building was completed *according to the terms of the contract,* and this sufficiently showed that the contract was completed, assuming that there is any substantial merit to the distinction sought to be drawn by appellants. We think the court made no error in overruling the demurrer.

The most important objection to the judgment, however, is that certain of the vital findings upon which it is founded are not supported by the evidence, and this involves the principal question around which the controversy submitted here revolves and upon which its solution hinges, viz., whether the plaintiffs filed their claim of lien—that of November 20, 1912—within the time prescribed by the statute; and, furthermore, whether said finding is sufficiently definite to constitute a clear and distinct finding of the fact to which it is addressed. The appellants also attack the finding respecting the extra work and materials above spoken of.

Section 1183 provides for a lien in favor of all persons for labor performed upon or for material used in the construction of any building, etc., for the value of the labor so done and the materials so furnished. This provision is only declaratory of the right expressly guaranteed by our constitution to artisans, mechanics, laborers, and materialmen to a lien upon property upon which they have bestowed labor and materials in the improvement thereof or the erection of a building thereon. (Const., art. XX, sec. 15.) The same section, however, further provides that any person having charge of the construction, etc., of the building or other improve-

ment, "shall be held to be the agent of the owner for the purposes of this chapter," thus binding the owner to any subcontracts with other persons in the construction or repair of the building or other improvements, provided, of course, such subcontracts are within the scope or the terms, conditions, and specifications of the original contract. A bond (heretofore referred to) is also provided by this section. It is the duty of the owner to exact this from the contractor and file the same in the office of the county recorder with the contract if he would restrict his liability to laborers and materialmen or subcontractors for their claims to the contract price. If he fails to require such bond to be executed and filed and none is filed, there is then imposed upon him "the penalty of paying all the liens to the extent of the value of the work done and materials furnished." (*Roystone Co.* v. *Darling,* 171 Cal. 526, [154 Pac. 15].)

But the provisions with which the principal question here is concerned are in section 1187. Said section, among other things, provides that "every person save the original contractor claiming the benefit of this chapter, within thirty days after he has ceased to labor or has ceased to furnish materials, or both; or at his option, within thirty days after the completion of the original contract, if any, under which he was employed, must file for record with the county recorder . . . a claim of lien containing," then follows a specification of the facts which the lien must contain and recite. Said section proceeds: "Any trivial imperfection in the said work, or in the completion of any contract by any lien claimant, or in the construction of any building, improvement or structure, or of the alteration, addition to, or repair thereof, shall not be deemed such a lack of completion as to prevent the filing of any lien; and, in all cases, any of the following shall be deemed equivalent to a completion for all the purposes of this chapter: the occupation or use of a building . . . by the owner, or his representative; or the acceptance by said owner or said agent, of said building . . . or cessation from labor for thirty days upon any contract or upon any building . . . ; the filing of the notice hereinafter provided for. The owner may within ten days after completion of any contract, or within forty days after cessation from labor thereon, file for record in the office of the county recorder . . . a

notice setting forth the date when the same was completed, or on which cessation from labor occurred, together with his name and the nature of his title, and a description of the property sufficient for identification, which notice shall be verified by himself or some other person on his behalf. . . . In case such notice be not so filed then the said owner and all persons deraigning title from or claiming any interest through him shall be estopped in any proceedings for the foreclosure of any lien provided for in this chapter from maintaining any defense therein based on the ground that said lien was not filed within the time provided in this chapter; provided, that all claims of lien must be filed within ninety days after the completion of any building,'' etc.

It is not contended, nor could it be successfully, that under section 1187 a lien claimant, other than the original contractor, may not file his lien within thirty days after the happening of any one of two events, viz.: 1. After he has ceased to labor or ceased to furnish materials, as the case may be, or both, if he has both performed the labor and furnished the materials; 2. After the completion of the original contract. The appellants do contend, however, that the plaintiffs should have filed their lien within thirty days after the seventeenth day of October, 1912, the date upon which it is found by the court that the Waldmanns, owners of the property, entered into the occupation of the building. The argument is that a lien claimant, other than the original contractor, must file his claim of lien, within thirty days after the first act constituting a completion of the building, whether it be an actual or only a statutory completion, and that if he fails to do so, then his right to a lien is lost. To be more explicit, the argument is: That, if a completion is effected, either by occupation or a cessation from labor or by acceptance, the time for the filing of the lien begins to run on that day, and the claimant cannot then claim the right to file his lien within thirty days after the building has actually been completed, if such actual completion occurs on a date subsequent to the completion by occupation or by acceptance or by cessation from labor, as the case may be.

In reply to the proposition so advanced, the plaintiffs say that, even if it be true that in this case the occupation and use of the building constituted a statutory or constructive and

not an actual completion of the building, the defendants were, nevertheless, required to file the notice of completion required by section 1187, and, having failed to file such notice, they are now estopped, under the terms of said section, from maintaining any defense in this action "based on the ground that said lien was not filed within the time provided in this chapter." The defendants argue, however, that the provision with regard to the notice of completion to be given applies solely to an actual completion and not to the statutory or constructive completion.

In the case of *Roystone Co.* v. *Darling,* 171 Cal. 526, [154 Pac. 15], the supreme court, for the first time because it was the first case calling for it, elaborately reviewed the lien law of 1911, which constitutes a general revision of the law theretofore existing upon that subject in this state. In that case, through Mr. Justice Shaw, the scope, the intent, and the meaning of the several provisions of that statute were thoroughly explored and lucidly exposed and explained. The question as to the application of the requirement of the statute that notice shall be given of the completion of the building to the several events constituting the equivalents of completion, when actual completion has not been effected, did not arise in that case. And, since the amendment of section 1897 (Stats. 1897, p. 202), whereby, for the first time, provision for notices of completion and cessation from labor were incorporated into that section, the proposition has been touched upon in but one case, *Meyer* v. *City Street Improvement Co.,* 164 Cal. 645, 648, [130 Pac. 215], which was decided before the revision of 1911, whereby, however, no change was made in respect of the requirement of notices prescribed by the 1897 amendment. In that case the court uses language strongly intimating, if not directly deciding, that notices should be filed in all cases. The precise language of the court is: "The first paragraph requires a notice of completion to be filed by the owner *in every case in which a lien may be filed under section 1183.*"

And no sound reason has been suggested in the briefs, and none has occurred to us, for holding that the requirement as to notice was not intended as well to apply to the statutory completion of a building as to the actual completion thereof. "The words 'shall be equivalent to a completion' mean shall be equal

in legal effect to a completion; that is, shall be treated for the purpose of filing a lien, as an actual completion." (*Kerckhoff-Cuzner Mill & Lumber Co.* v. *Olmstead,* 85 Cal. 80, 84, [24 Pac. 648].) The object of the statute in requiring notice to be given in any case is not only to prevent the filing of premature liens, and thus the unseasonable and unnecessary embarrassment of the property of the owner, but, principally, to protect the claimant from losing his right to a lien or suffering it to lapse by default, due to his want of knowledge of some sort of the date on which the time within which he is required to file his lien has commenced to run, so that he may preserve and have the benefit of the remedy granted to him by the constitution. The legislature certainly could not have intended that lien claimants, in the cases of statutory completion, other than those where the owner is required to file a notice, should be compelled to exercise constant vigil over the movements of the owner to see whether he had commenced occupation of the building or had accepted it before its actual completion. Indeed, it would be impossible for the claimant to know whether occupation before actual completion had taken place, since, clearly, "occupation" within the meaning of the statute involves not a question of fact alone, but also a question of law. An owner, for reasons of convenience, might enter into the occupation of a building while it is still in course of completion, with the understanding that it is not then to be accepted and that the work of completion shall be proceeded with. Hence, occupation is a question of law to be determined upon the circumstances under which it occurs. The argument that, following out to its logical conclusion that the provision as to notice applies to all the events constituting a constructive completion, would lead to the absurdity of requiring notice to be given of the filing of the notice of the completion of a contract or of the cessation from labor, is far-fetched and fallacious. The notice of the completion of the building, or of the cessation from labor, is itself notice of the event. The effect of filing a notice of the completion of a building in the office of the county recorder is, it is true, only to give constructive notice of that fact, but it is the legal and common method for giving such notice, and by it parties whose rights in the subject to which the notice relates are affected are, according to the legislative judgment, the more likely to obtain actual knowledge of the facts which

the notice must contain. But, whether they do or do not acquire actual knowledge of the fact or facts which the notice must contain, there should be, as a matter of public policy, some legal foundation for charging them with notice, which cannot be done where the act as to which some kind of notice should be had is left to the capriciously exercised option of an individual.

It follows from the views thus ventured that, conceding it to be true that lien claimants must file their claims of lien within thirty days after the happening of the first act which constitutes a completion, whether the same be actual or statutory, or, in other words, that they cannot exercise the option of filing their liens within thirty days after any one of several events of completion which have occurred on different dates, the plaintiffs were not bound by the fact of the occupation of the building on the 17th of October, assuming that such occupation amounted to the completion of the building within the contemplation of the statute in such case. They, in other words, could not be charged with notice of such completion, and even if they had been shown to have had actual knowledge of the fact, the defendants, under the express and mandatory terms of the statute, would have been estopped from basing any defense against the assertion of their right to the lien on the ground of the failure to file the same within time.

It further follows from the views above expressed that the finding that "on October 17, 1912, defendants, Charles H. Waldmann and Nellie V. Waldmann, entered into, and ever since have been in the actual and exclusive use and occupation of said building," was wholly unnecessary, and indeed, supererogatory, and is, therefore, immaterial, assuming that the finding was intended to declare as a fact that the building or contract had been constructively completed by occupation.

The lien upon which the plaintiffs rely, however, has reference to the actual completion of the building on the twenty-sixth day of October, 1912. This lien, as we have seen, was filed on the twentieth day of November, 1912, and is the lien pleaded in the first count of the complaint and the one to which the court found the plaintiffs to be entitled.

As above stated, it is contended by the appellants that the evidence does not support the finding that the building was

actually completed on the twenty-sixth day of October, 1912. The record does not support the contention.

The defendant, C. H. Waldmann, testified that the last work done on the building was by the painter on the twenty-sixth day of October, 1912. On that day he did some work of painting on the house. It required him about two hours to do the work. This work was done, it is to be assumed, in pursuance of the building contract or the specifications attached thereto as a part thereof. The court was justified from this testimony in finding, as it did, that the building was completed on the twenty-sixth day of October. So long as the work performed was called for by the contract and essential to the completion of the building, the extent of the work or the length of time required to do it is wholly immaterial, for in such case the last stroke of the painter's brush marked the time of the completion. It may be true that if, when the lien was filed and it was sought to enforce it through a judicial decree, the two hours' work of the painter was still unfinished, and such work constituted all that was necessary to complete the building according to the terms and conditions of the contract and specifications, the omission to do that work might justly be treated as a "trivial imperfection" in the work of completion; but this argues nothing against the proposition above stated that the finishing of the work of painting marked the date of the actual completion of the building, said work being all that was necessary actually to complete it.

But there is some other testimony, or, strictly speaking, an admission by the appellants, which tends to support the finding that the building was actually completed on the twenty-sixth day of October. The complaint, in the second cause of action therein stated, alleges that the appellants, on the thirtieth day of November, 1912, filed for record in the office of the county recorder of the city and county of San Francisco their notice "wherein it was stated that a cessation of labor on said building had occurred October 26, 1912," etc. This averment is not denied by the answer, and it therefore stands in the record as an admitted fact. It matters not what the purpose of the filing of said notice by appellants or the pleading of the fact by the plaintiffs was; the fact is consistent with and supports the finding that the

building was actually completed on October 26th, and it constituted a fact in the case which it was competent and proper for the court to consider in reaching a conclusion upon the question of actual completion.

But it is further insisted, with respect to the finding of actual completion, that it constitutes no finding at all upon that question, inasmuch as the finding does not definitely fix the date upon which the actual completion occurred. The finding is, as seen, that the building ''was duly completed and constructed, except for a trivial imperfection in such construction, by Felix Marcuse, according to the terms of the contract . . . on or about October 26, 1912, and subsequent to October 20, 1912.''

The finding would ordinarily be held to be rather indefinite and perhaps would, standing alone, be insufficient to support the judgment. But, as has been shown, the appellants admitted that there was a cessation from labor on October 26th, and this admission must be viewed as a part of the findings. And viewed as a part of the findings and considered with the finding above referred to, it becomes reasonably clear and certain from the findings that the actual completion of the building occurred on the twenty-sixth day of October. But we think that the phrase ''on or about'' should be held to mean either the day mentioned or a day in very near proximity thereto. It cannot reasonably be held to mean, in other words, if not the day designated, a day ten, fifteen, or twenty days therefrom. Ordinarily, it is understood to refer to a day or two before or subsequent to the day specifically named. The lien of the plaintiffs was filed on the twentieth day of November, 1912; the finding declares that the building was completed subsequent to the twentieth day of October, and ''on or about'' or within a day or two of the twenty-sixth day of October. In this view, the finding makes it reasonably clear and definite that the lien was filed within thirty days after the completion of the building.

The next objection is that the finding as to the extra work done and extra materials furnished by the plaintiffs, and as to the reasonableness of the value of the same, does not derive sufficient support from the evidence.

We cannot, at the expense of extending this opinion beyond its present length, reproduce herein testimony or the

substance thereof which we think sustains the finding referred
to. It must suffice for us to say that we have carefully ex-
amined the testimony and therefrom have been convinced
that the court was amply justified in making said finding.

There are no other points requiring special notice.

The judgment is affirmed.

Chipman, P. J., and Ellison, J., *pro tem.*, concurred.

A petition to have the cause heard in the supreme court,
after judgment in the district court of appeal, was denied by
the supreme court on October 12, 1916.