[Civ. No. 2007. Third Appellate District.—August 26, 1919.]

PHILIP F. MOTT, Appellant, v. FRANK E. WRIGHT et al., Respondents.

CHESTER E. KING, Appellant, v. FRANK E. WRIGHT et al., Respondents.

A. R. MacSWAIN et al., Appellants, v. FRANK E. WRIGHT et al., Respondents.

[1] MECHANICS' LIENS—ACTION TO FORECLOSE—COMPLETION OF CONTRACT—EVIDENCE.—In an action to foreclose a mechanic's lien, testimony that work or labor ceased on the building in question on a given date, that the last work necessary to be done on the building to complete the contract was performed on that date, and that the building was then completed and nothing more was to be done thereon, is equivalent to testimony that the contract was completed on that date, and from it the trial court was justified in so finding, if it believed such testimony.

[2] ID.—CESSATION FROM LABOR — CONSTRUCTIVE COMPLETION.—The cessation from labor by reason of the actual completion of the contract is not the cessation of labor which, under section 1187

of the Code of Civil Procedure, itself constitutes a constructive completion of the building or contract.

[3] ID.—CONFLICTING EVIDENCE—FINDING—APPEAL—INVALID CLAIMS. In an action to foreclose a mechanic's lien, testimony tending to show that the building was completed at a later date than that testified to by the witnesses for the defendants, and as found by the court, merely raises a conflict in the evidence upon that issue, and the trial court having resolved such conflict in favor of the defendants, the appellate court is concluded by its findings, and claims of lien not filed within ninety days of the date of completion, so found, are ineffective.

[4] ID.—TIME FOR FILING CLAIMS — SUBSTANTIAL COMPLETION.—All that the statute requires, to fix the time from which the right of lien claimants to file their liens begins to run, is that there be, so far as actual completion is concerned, a substantial completion, and, in this case, the testimony shows that there was such a completion, if not more than that.

[5] ID.—ONE HUNDRED AND TWENTY DAY RULE—APPLICATION OF.— The rule as to the one hundred and twenty days' period after cessation from labor within which claims may be filed has no application where there is an actual completion.

[6] ID.—OCCUPATION OF BUILDING DURING PERFORMANCE OF WORK— PRESUMPTION OF COMPLETION.—Where the lien claimants do all their work after the occupation or use by the owner takes place, or while the owner is occupying or using the building, this occupation or use is not such as raises a conclusive presumption of completion under the statute.

[7] ID.—PERSONAL LIABILITY OF OWNER—WANT OF PRIVITY.—Where there is no contract, either express or implied, between the owner and the lien claimants for materials furnished and labor performed, such owner cannot be held personally liable therefor.

[8] ID.—PERFORMANCE AT REQUEST OF CONTRACTOR — PLEADING — RECOVERY IN QUANTUM MERUIT.—Where, in an action to foreclose a mechanic's lien, it is alleged in the complaint that the labor bestowed upon and the materials furnished for the building were so bestowed and furnished in pursuance of the contract between the contractor and the owner and were bestowed and furnished at the instance of the contractor, and no issue as to the reasonable value of the labor and the materials is submitted in the form of a common count, no recovery can be had against the owner in *quantum meruit.*

[9] ID.—APPORTIONMENT OF PRICE—CONTRACT SEVERABLE.—Where the agreed price for performing a given contract is apportioned to each item according to the value thereof and not as one unit, such contract is not an entire one, but is severable. (On petition for rehearing.)

APPEAL from a judgment of the Superior Court of Sacramento County. Charles O. Busick, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. A. Gett and Johnson & Lemmon for Appellants.

Devlin & Devlin for Respondents.

HART, J.—The actions were brought to enforce mechanics' liens and were consolidated for trial. Judgment was rendered in favor of plaintiffs against Frank P. Williams, the contractor, and in favor of Frank E. Wright, the owner, for his costs; and that the plaintiffs were not entitled·to liens upon the premises described in the complaints. The appeal is by plaintiffs from the judgment.

The owner, defendant Wright, entered into a contract with the contractor, defendant Williams, for the removal of a cottage from 11th and O Streets, in the city of Sacramento, to 24th and L Streets, in said city, and for the raising of said cottage and constructing flats underneath the same. The liens in question are sought to be enforced against the lot on 23d and L Streets. Work started on the flats about the middle of February, 1915, and continued without cessation until the twelfth day of May, 1915. From about March the owner occupied the upper portion of the building and later on tenants occupied the flats.

It was found by the court that defendant Wright entered into a contract with defendant Williams, "which said contract was never recorded in the office of the county recorder of Sacramento County," under which said contractor agreed to construct said building; that no notice of completion of said building or contract and no notice of cessation of labor were recorded: "that the said building and said contract were completed on the twelfth day of May, 1915. That subsequent to said twelfth day of May, 1915, the plaintiff Chester E. King repapered a portion of the hallway of the building located on said premises. That the papering of said hallway had been completed by said plaintiff Chester E. King prior to the twelfth day of May, 1915, but said papering was defectively done by said plaintiff Chester E. King, whereby it became necessary for him to repaper a portion of said hall-

way. That the cost of repapering said hallway subsequent to the said twelfth day of May, 1915, was the sum of $2.40. That the condition of said hallway subsequent to the twelfth day of May, 1915, was a trivial imperfection in said work and was not such as would prevent filing of liens. That the cost of said repapering said hallway was trivial in comparison with the cost of the work and improvements that were done under said contract.''

The liens which are sought to be enforced were filed, respectively, August 12, 15, and 18, 1915. The complaints alleged the completion of the work on June 1st.

It is strenuously argued by appellants that the finding that the building was actually completed on May 12, 1915, is unsupported by the evidence. The contractor testified that the last work he did was about May 28th or June 1st; Mott, the plumber, said that he went to the building on June 2d to fix a water-pipe; and King, the painter and paper-hanger, testified that he worked personally on the building about the 14th or 15th of May and that in the week ending May 29th one man worked there. King produced his ''labor-book'' showing the following entries: ''May 15. Bert Renner. $2.50. May 29. Pape. $2.00.'' The last item was explained to have been for repairing in the hall where the plaster had burned through the paper. It was also explained that the men working for Mr. King turned in their time-cards every Saturday, showing the time they had worked during the week; that the time-cards were destroyed and the total paid each man entered in the labor-book at the week-end. Consequently the item of May 15th covered work that may have been performed on any day between the 10th and 15th, both inclusive, and the work shown by the item of May 29th may have been done on any day between the 17th and 29th, both inclusive.

The testimony on behalf of respondent on this point was as follows: M. F. Trebilcox testified that the two lower flats were rented to tenants who took possession on April 1st. Mr. Dunn, one of the tenants, testified that he took possession on April 7th of the east lower flat; that at the time it was finished and ready for occupancy and there were no mechanics working in the building after that except, he believed, some painters were working on the garage, and he did not think they had finished upstairs; he thought the west flat was also

finished; that some carpenters were working "for maybe a week or more." Defendant Wright testified that he moved into the building the 1st of March; that labor ceased on May 12th and at that time there was no further work to be done on the property, either the upper part or the lower flats. Mr. Wright's wife corroborated his testimony.

The discussion to follow will be the better understood by first reproducing herein the provisions of section 1187 of the Code of Civil Procedure pertinent to the points advanced here by the appellants. Said section provides that every person save the original contractor "claiming the benefit of this chapter [on the enforcement of liens of mechanics, laborers, and materialmen], within thirty days after he has ceased to labor or has ceased to furnish materials, or both; or at his option, within thirty days after the completion of the original contract, if any, under which he is employed, must file for record . . . a claim of lien . . ." The said section further provides: "Any trivial imperfection in the said work, or in the completion of any contract by any lien claimant, or in the construction of any buildings . . . shall not be deemed such a lack of completion as to prevent the filing of any lien; and, in all cases, any of the following shall be deemed equivalent to a completion for all the purposes of this chapter: the occupation or use of a building, improvement, or structure, by the owner, or his representative; or the acceptance by said owner or said agent, of said building, improvement, or structure, or cessation from labor for thirty days upon any contract or upon any building, improvement or structure or the alteration, addition to, or repair thereof; the filing of the notice hereinafter provided for. The owner may, within ten days after completion of any contract, or within forty days after cessation from labor thereon, file for record in the office of the county recorder of the county where the property is situated, a notice setting forth the date when the same was completed, or on which cessation from labor occurred, together with his name and the nature of his title, and a description of the property sufficient for identification, which notice shall be verified by himself or some other person on his behalf. . . . In case such notice be not so filed, then the said owner and all persons deraigning title from or claiming any interest through him shall be estopped in any proceedings for the foreclosure of any lien provided for in this

chapter from maintaining any defense therein based on the ground that said lien was not filed within the time provided in this chapter; provided, that all claims of lien must be filed within ninety days after the completion of any building, improvement or structure, or the alteration, addition or repair thereto.''

The appellants insist that the evidence without conflict shows that there was not an actual completion of the building under the contract on the twelfth day of May, 1915, but that there was only a constructive completion by cessation from labor on said day. But in this they are mistaken. [1] Wright, the owner, testified, it is true, that work or labor ceased on the building on the twelfth day of May, 1915. He also testified, as seen, and Mrs. Wright corroborated him, that the last work necessary to be done on the building to complete the contract was performed on the twelfth day of May and that the building was then completed and nothing more was to be done thereon. Of course, that testimony was the equivalent of testimony that the contract was completed, and from it the trial court was justified in so finding, if it believed the testimony, as obviously it did. [2] Manifestly, there must have been a cessation of labor when the building was completed according to the terms of the contract, but the cessation from labor by reason of the actual completion of the contract is not the cessation from labor which, under section 1187, itself constitutes a constructive completion of the building or contract.

[3] There is, it is true, some testimony slightly tending to show that the actual completion occurred at a later date, which would render the liens effective, but this merely raised a conflict in the evidence upon that issue which the trial court resolved, as it was within its constitutional province to do, in favor of the defendants. This court is, as is well understood, concluded by the findings so made, and must accept as the fact that the building was actually completed according to the terms and requirements of the contract on the twelfth day of May, 1915. It follows therefore, that the appellants filed their claims too late to render them effective or of any force.

[4] As to the work of repapering a portion of the hallway on May 29, 1915, by King, who had the contract for papering the house, the uncontradicted testimony upon that

point shows that said work of repapering occurred after King
had finished his contract.  Wright, the owner of the house,
called on King after the building had been in all respects com-
pleted, and, informing him that there was a defect in the
papering in the hallway, requested him (King) to repaper
the defective part, and, as seen, on the twenty-ninth day of
May, King did so.  This work of repapering required, ac-
cording to the testimony, approximately two hours' time.  If
the testimony of King as to this matter is to be accepted, the
defect in the papering was not due to any remissness or lack
of proper skill or care on his part in doing the work origini-
nally, but to some circumstance or fact subsequently occur-
ring and over which he had no control; and if this be true,
the work of repapering was as far removed from any con-
sideration of the original contract as though the papering had
naturally become defective from long use.  But however that
may be, it is clear that if the original papering was defec-
tively done and the repapering was for that reason required
to be done, it amounted to a trivial imperfection only in the
work, within the meaning of that language in section 1187.
All that the statute requires, to fix the time from which the
right of lien claimants to file their liens begins to run, is
that there be, so far as actual completion is concerned, a
substantial completion, and, in this case, the testimony shows
that there was such a completion, if, indeed, not more than
that.  (*Willamette etc. Co.* v. *Los Angeles College Co.*, 94
Cal. 229, 237, [29 Pac. 629]; *Harlan* v. *Stufflebeem*, 87 Cal.
508, [25 Pac. 686]; *Santa Monica L. & M. Co.* v. *Hege*, 119
Cal. 376, 379, [51 Pac. 555]; *Schindler* v. *Green*, 149 Cal. 752,
754, [87 Pac. 626]; *Bianchi* v. *Hughes*, 124 Cal. 24, 27,
[56 Pac. 610]; *Jost* v. *Sullivan*, 111 Cal. 286, 292, [43
Pac. 896].)

[5]  The foregoing, of course, disposes of the proposition
earnestly urged by the appellants that the completion was not
actual but by cessation from labor, and that, therefore, they
were entitled to file their liens at any time within one hun-
dred and twenty days from the date of the cessation from
labor, and that in that view their liens were seasonably filed
under the law.  But there is some intimation by appellants
in their briefs that the one hundred and twenty days' limi-
tation applies in all cases of completion, whether actual or
statutory, and they cite as supporting that view the cases of

*Buell* v. *Brown,* 131 Cal. 158, [63 Pac. 167], and *Farnham* v. *California Safe Deposit & Trust Co.,* 8 Cal. App. 266, [96 Pac. 788].

In each of those cases the lien claimants relied upon a constructive completion of the contract by cessation from labor, and it was held that where a contract has not been actually completed but there was a constructive completion by cessation from labor for the period of thirty days, and no notice of such cessation had been filed by the owner with the office of the county recorder, lien claimants have ninety days from and after the expiration of the thirty days of cessation from labor within which to file their liens. In other words, in such case lien claimants relying on completion by cessation from labor are, like those relying on actual completion, limited, as to the time within which they may file their liens, where the owner has failed or neglected within the prescribed period to file with the county recorder a notice of the cessation from labor, to ninety days from the time that there has been a completion by cessation from labor (thirty days from and after the time of such cessation) within which to file their liens, or one hundred and twenty days from the date of the cessation from labor. But, in this case, there was an actual completion, and the rule as to the one hundred and twenty days' period can have no application where there is an actual completion. The statute plainly provides that all claims of lien must be filed within ninety days after the completion of any building, improvement, etc., and, as a matter of fact, that provision, as above suggested, applies not only to cases of actual completion, but also to those of constructive completion, including completion by cessation from labor, for in the latter case, as is obvious, there is no completion until there has been a cessation from labor for the period of thirty days, from and after which time the lien claimant has, by virtue of the estoppel arising against the owner upon his failure to file with the county recorder notice of the cessation from labor, ninety days within which to file his lien.

Counsel for the respondents state in their brief that the appellants claim, for the first time on this appeal, that there was a constructive completion of the contract through occupation and use of the building by the owner. But counsel for appellants make no such contention here. Indeed, in

their closing brief they positively declare that there is no
ground afforded by the record for any such claim, and in
this they are clearly right. The owner never ceased occupy-
ing the building at any time pending the reconstruction or
alteration thereof, except during the brief time the building
was in the course of removal from Eleventh and O Streets
to Twenty-third and L Streets, in Sacramento. [6] The
lien claimants here involved did all their work after the
occupation or use by the owner took place, or while the owner
was occupying and using the building. This, quite clearly, is
not such an occupation or use as raises a conclusive presump-
tion of completion under the statute. (*Orlandi* v. *Gray*, 125
Cal. 372, 374, [58 Pac. 15]; *Boscus* v. *Waldmann*, 31 Cal.
App. 245, 255, [160 Pac. 180].)

[7] It is lastly contended that, because the materials and
the labor were furnished with the knowledge and consent of
Wright, an implied contract arose between the claimants and
Wright, and that having received the benefit of the labor
performed and the materials furnished, Wright ought in
equity and good conscience to be held to be personally liable
and compelled to pay the appellants their claims. There are
two answers to this proposition, viz.: 1. As the court found,
upon sufficient evidence, to be true, the materials and labor
were furnished to Williams, the contractor, and, as is neces-
sarily implied from that finding, the materials and the labor
were not furnished to Wright. In other words, there was
no contract, either express or implied, between the material-
men and the laborers and the owner. There was, therefore,
no privity of contract between the defendant Wright and the
several lien claimants. Obviously, to sustain an action
against Wright it must be upon the theory that he is per-
sonally liable, and to render him personally liable, there must
be shown to exist a contract, express or implied, or a con-
tractual privity, between him and those claiming liens. [8]
2. The complaints, in neither counts thereof, submit any issue
as to the reasonable value of the labor and the materials in
the form of a common count. It is true that the complaints
are in two counts, but in both it is alleged that the labor
bestowed upon and the materials furnished for the building
were so bestowed and furnished in pursuance of the con-
tract between the contractor and the owner and were be-
stowed and furnished at the instance of the contractor.

There is no allegation in either count of the complaints that the materials were furnished for and the labor done on the building at the direct instance of Frank E. Wright, the owner, or at his instance at all. There is, in short, no attempt to rely upon a common count in the form of a *quantum meruit.* While the second count in each of the complaints alleges that the materials and the labor were "of the reasonable value of" the respective amounts of the several claims, the right to the enforcement of the payment of said claims is expressly and primarily based upon the contract between Williams and Wright and upon the theory that said materials and labor were furnished and bestowed at the instance of Williams, the contractor.

The case of *Southern California Lumber Co. v. Schmitt,* 74 Cal. 625, 626, [16 Pac. 516], was decided when section 1183 of the Code of Civil Procedure provided that all contracts for work on buildings or other improvements, where the amount agreed to be paid thereunder exceeded one thousand dollars, should be in writing and filed by the owner in the office of the county recorder, in default of which the contract became wholly void and no recovery could be had thereon, and that in that case the work done and the materials furnished thereunder were to be deemed to have been done and furnished at the personal instance of the owner, and that laborers, mechanics, and materialmen doing work thereon and furnishing materials therefor should have a lien for the value thereof. Answering the argument made in that case that, notwithstanding that no liens were filed for the enforcement of the plaintiff's claim for furnishing materials for a building constructed for the owner by a contractor, a personal judgment for the value of the materials could be entered and enforced against the owner, the supreme court said:

"It is claimed, although no lien exists on the building as to the contractor, and those who may claim under him, and none as to the materialman, that nevertheless, according to section 1183 of the Code of Civil Procedure, the plaintiff ought to have had a personal judgment against Schmitt, with whom he never had any contract to furnish the building materials. . . .

"We cannot agree with the appellant in a case where neither the contractor nor the materialman has filed any lien, such as is given them by statute, that under the section,

*supra,* a personal judgment for the value of the materials furnished may be had against the owner of the building, who did not purchase them, and who was under no contract with the materialman, either express or implied, to pay for them.'' (See, also, *Davies-Henderson L. Co.* v. *Gottschalk,* 81 Cal. 641, 647, [22 Pac. 860]; *First Nat. Bank* v. *Perris,* 107 Cal. 55, 64, [40 Pac. 45]; *Marchant* v. *Hayes,* 120 Cal. 137, 139, [52 Pac. 154].)

The cases relied upon by appellants as supporting their position that they are entitled to a personal judgment against the owner of the building are: *Castagnino* v. *Balletta,* 82 Cal. 250, [23 Pac. 127]; *Acme Lumber Co.* v. *Wessling,* 19 Cal. App. 406, [126 Pac. 167], and *Gentle* v. *Britton,* 158 Cal. 328, [111 Pac. 9]. But the decisions in those cases proceed upon a very much different state of facts from that with which we are confronted in this case. In *Castagnino* v. *Balletta* the action was by the contractor against the owner, between whom and the former a contract had been entered into for the construction of certain buildings. The complaint declared upon two counts, one being for the foreclosure of a mechanic's lien and the other in *indebitatus assumpsit,* or a common count, founded upon the proposition that the original contract had been departed from in material respects in the construction of the buildings. That is not this case.

In *Acme Lumber Co.* v. *Wessling* the action was for the foreclosure of a lien for work done under an oral and consequently an unrecorded contract between the contractor and a tenant in possession of the real property upon which the improvement was made. It was made to appear that the owner had knowledge of the improvement being made on his premises, but that he failed to file the notice of nonresponsibility prescribed by section 1192 of the Code of Civil Procedure, and it was, therefore, held that, by virtue of the terms of said section, it was to be presumed that the improvement was constructed or made at the instance of the owner of the premises, and said premises were subject to the lien filed for the materials and labor used in the work of improvement. But it is claimed or intimated that in that case the complaint proceeded upon a *quantum meruit* against the owner of the premises and that the appellate court held that it was proper to do so. But, even so, that case is not in point here, for the reason that between the plaintiff therein, who was the assignor

of the contractor, and the owner there existed a privity of contract, created by the terms of section 1192.

*Gentle* v. *Britton* is another case where section 1192 was applied, the improvement having been made under a contract between the contractor and a party not the real owner of the premises upon which the improvement was made. The conditions pointed out by said section 1192 to render the premises subject to a lien for the labor and materials used in the improvement were found to exist in that case, hence an equitable lien was created on the premises to secure the payment of the value of the labor and materials. It is obvious that section 1192 has no application to the facts of this case.

We have been shown no reason for disturbing the judgment, and it will, therefore, stand affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on September 25, 1919, and the following opinion then rendered thereon:

HART, J.—Appellants have filed a petition for rehearing in which several points are raised. [9] The first one is, that the contract in question was an entire and not a divisible one. The contract was made by Wright, the owner, with Williams, the contractor, and provided for the erection of a six-flat building upon a lot at Eleventh and O Streets, in the city of Sacramento, for the consideration of nine thousand five hundred dollars. Said contract also contained the following provision:

"It is hereby agreed that in consideration of receiving the above contract, the party of second part will furnish plans, and superintend the moving and erection of flats under present house, the location to be 23rd and L sts., without commission or consideration, it being understood that this work is to be done at absolute cost to the owner. The cost of remodeling not to exceed $1800 and moving not to exceed $125. He will also agree to superintend erection of garages and other work on lot which owner may desire under above conditions."

The specific point made is, that the work on the O Street property was not completed until June 4 or June 12, 1915, which is "the true date from which the tolling of the limitation of time within which liens may be filed is to be computed," and not May 12, 1915, the date of the completion of the work on the L Street property.

In neither appellant's opening brief nor in his reply brief is there one word concerning the Eleventh and O Streets property. Indeed, there seems from the record not to be any occasion for referring to that property, because there is nothing in the pleadings, nothing in the findings, nothing in the evidence, and nothing in the judgment having any reference to the O Street property except incidentally it is mentioned by one of the witnesses. The liens were all filed against the Twenty-third and L Streets property and there was no issue in the case regarding the O Street property. If questions can be raised for the first time in the petition for rehearing, there would never be an end to litigation. It has in many cases been held that where a case has been decided, a new point raised in appellant's reply brief or in the petition for rehearing will not be considered. (*Buena Vista Oil Co.* v. *Park Bank of Los Angeles,* 39 Cal. App. 716, [180 Pac. 12]; *Camp* v. *Boyd,* 41 Cal. App. 83, [182 Pac. 60]; *Hibernia Sav. & Loan Soc.* v. *Farnham,* 153 Cal. 578, [126 Am. St. Rep. 129, 96 Pac. 9]; *Flores* v. *Stone,* 21 Cal. App. 105, [131 Pac. 348, 351, 352].) However, in this case, we will consider the point raised.

In 13 C. J., page 563, it is said: "If the consideration is single, the contract is entire, but if the consideration is either expressly or by necessary implication apportioned, the contract will be regarded as severable. . . . Where the portion of the contract to be performed by one party consists of several and distinct items, and the price to be paid is apportioned to each item according to the value thereof and not as one unit in a whole or in a part of a round sum, the contract will ordinarily be regarded as severable."

In Elliott on Contracts (volume 4, section 3667) it is said: "A building, construction or working contract is entire and not divisible, where it is for an entire structure for a stated compensation. . . . If the price is apportioned among the several items or to the different parts of one item, the contract will generally be construed as severable."

In the case at bar "the price was apportioned to each item according to the value thereof and not as one unit," and we hold that the contract was not an entire one, but was severable.

As to the remaining points raised in the petition, that "provisions as to trivial imperfections were designed merely to prevent premature filing of liens" and that "slight work after substantial completion, done at request or with consent of owner or subcontractor, extends time for filing liens," we are satisfied with what is said in the main opinion.

The petition for a rehearing will be denied.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 23, 1919.

All the Justices concurred.