[No. 13843.   In Bank. — August 31, 1891.]

## C. H. REED ET AL., RESPONDENTS, *v.* THOMAS NORTON, APPELLANT.

MECHANIC'S LIEN — VARIANCE BETWEEN NOTICE OF CLAIM AND CONTRACT — REASONABLE VALUE — SPECIAL CONTRACT — FINDING — INSUFFICIENCY OF EVIDENCE. — A finding that a notice of claim of lien filed by a materialman was "in due form as required by law" is not sustained by the evidence, where the notice stated that the materials were to be paid for on the basis of what they were reasonably worth, and the evidence shows that part of them were furnished at an agreed price, and the remainder without any agreement as to price, though it is testified that they were all reasonably worth the amount charged; nor does such evidence sustain a finding of an agreement to pay for them all at what they were reasonably worth.

ID. — STOPPING WORK UNDER SPECIAL CONTRACT — CLAIM FOR REASONABLE VALUE. — Where a notice of claim of lien stated that the agreement between the claimant and the owner of the building was, that the claimant "was to be paid for the labor done and furnished at what it was reasonably worth, to be paid for when the work ceased," and the evidence showed that the claimant had an express contract to do the work for a specified sum, and that he did a portion of it, and stopped because the owner refused to pay him, the variance between the notice of lien and the actual contract proved is fatal.

ID. — NAME OF EMPLOYER — IMMATERIAL VARIANCE. — Where the notice of claim of lien stated that the materials were furnished to a contractor, and that the claimants were employed by both the contractor and the owner of the building to furnish them, and the evidence showed that the

owner alone originally contracted with the claimants to furnish the material, but that it went into the building that the contractor was erecting for the owner, and for which he got it from the material-men, and that the contractor admitted his liability therefor by giving orders for part payment drawn on the owner, which were paid, the variance between the claim of lien and contract proved is immaterial, and cannot injure the owner.

ID. — STATEMENT OF USUAL PRICE — REASONABLE VALUE AT CLAIMANT'S PLACE OF BUSINESS — PAYMENT ON DELIVERY. — A notice of claim of lien by material-men which states that the price agreed upon was "the usual price, and what said materials were reasonably worth at their place of business," states, in legal effect, a contract that the materials were to be paid for on delivery at what they were reasonably worth.

ID. — EVIDENCE — REASONABLE VALUE — AGREEMENT TO PAY ON DELIVERY. — Such claim is sufficiently sustained by proof that the materials asked for were furnished on order of the architects, and used in the building, and were reasonably worth a certain sum, no part of which has been paid, and it is unnecessary to prove an express agreement to pay for them at the time of delivery.

ID. — CLAIM RECOGNIZING VALID CONTRACT — PLEADING — COMPLAINT ALLEGING VOID CONTRACT — PURCHASE BY CONTRACTOR AS AGENT — IMMATERIAL VARIANCE. — No material variance between the notice of claim of lien and the complaint of foreclosure appears merely because the notice treated the contract between the owner and contractor as valid, and did not allege that the contract or a memorandum thereof was not filed, but stated that the contractor purchased the materials both as contractor and as agent of the owner, while the complaint alleged that the contract was void for want of filing, and that the contractor purchased the materials as agent only for the owner.

ID. — FORECLOSURE — PLEADING — SUPPORT OF FINDING — USE OF MATERIALS IN BUILDING. — An allegation in the complaint of foreclosure that the claimants sold and delivered to the owner of the building "certain hardware and building material to be used in the erection and construction of said building, and affixed and attached thereto," is, in the absence of a special demurrer, a sufficient allegation that the materials were used in the building to support a finding to that effect.

ID. — SUBCONTRACT — RECORD — CONSTRUCTION OF CODE. — The contract of a mere subcontractor and material-man is not required to be in writing or recorded, under section 1133 of the Code of Civil Procedure, although it is over one thousand dollars.

ID. — TIME FOR CLAIM OF LIEN — COMPLETION OF BUILDING — CESSATION OF WORK BY CONTRACTOR. — Where the contractor had ceased to work upon the building for thirty days before the lien claims of subcontractors and material-men were filed, the building is deemed complete in legal contemplation, and the filing of the claims is not premature.

ID. — COMMENCEMENT OF WORK BEFORE FILING OF CONTRACT — FINDING — INSUFFICIENCY OF EVIDENCE. — Where the claimant's memorandum of contract was filed at 10:30, A. M., and the evidence shows that if any work at all was commenced before the filing, it was of the most trivial

nature, and was not commenced until 8 or 8: 30, A. M., of the same day, a finding that the work was commenced before the filing of the memorandum is not sustained by the evidence.

ID. — RECORD — PLANS AND SPECIFICATIONS. — A contract between an owner and contractor for the erection of a building, made since the amendment of 1887 to section 1183 of the Code of Civil Procedure, is not rendered invalid by a failure to file in the recorder's office the plans and specifications for the building.

ID. — SUFFICIENCY OF ORIGINAL CONTRACT — TERMS OF PAYMENT — PAYMENTS FOR MATERIALS AND LABOR. — Where the contract between the owner of the building and the contractor provided that the owner would, upon the written order of the contractor, pay the material-men for materials furnished as soon as the material should be actually worked into the building, and also pay the mechanics and laborers upon the building weekly, the payments are specific enough as to time and amounts to comply substantially with the statute.

ID. — VERIFICATION OF CLAIM OF LIEN. — The verification to a claim of lien is sufficient if it states that the claim is true, and it need not set out the particulars contained in the body of the claim.

ID. — LIABILITY OF OWNER OF BUILDING — NEGLECT TO RETAIN PERCENTAGE FROM CONTRACTOR. — The neglect of the owner of the building to retain for thirty-five days after the final completion of the work and contract, and to pay over to those entitled thereto, twenty-five per cent of the contract price, renders him responsible to such persons to that extent, less any lawful credits the owner may be entitled to under section 1200 of the Code of Civil Procedure or otherwise.

APPEAL from a judgment of the Superior Court of San Luis Obispo County, and from an order denying a new trial.

The facts are stated in the opinion of Commissioner Foote.

*William Shipsey*, and *Graves, Turner & Graves*, for Appellant.

*J. M. Wilcoxson*, for Respondents.

The COURT. — This case was first submitted in Department Two, and on January 31, 1891, the judgment and order denying a new trial were reversed, the opinion having been prepared by Commissioner Foote. A hearing in Bank was afterwards ordered, and the cause was again argued and submitted. After a full consideration

of the case, we are satisfied with the conclusion reached and the opinion filed in Department.

In their brief on rehearing, counsel for appellant suggest that the last clause of the said opinion would compel the court below to render judgment against appellant for the full amount of twenty-five per centum of the contract price, and to exclude any credits which he might lawfully have. We do not think that such is the meaning of the opinion; but in order to remove any doubt on the subject, we say, in addition, that if appellant has any lawful credits under section 1200 of the Code of Civil Procedure or otherwise, he is entitled to the same, to be deducted from said twenty-five per centum.

The judgment and order appealed from are reversed, and the cause remanded for a new trial.

BEATTY, C. J., dissented.

The following is the opinion above referred to: —

FOOTE, C. — Eight actions were brought against the defendants here, — the owner of a building, Thomas Norton, and his contractor, Thomas Helm, — to enforce the liens of certain mechanics and material-men. Before trial they were all consolidated. The contractor, Helm, made default. Norton, the property owner, answered, denying all the allegations of the complaints, except as to his ownership of the property on which the liens were sought to be enforced. Judgment passed for the plaintiffs, it being stipulated that there should be no priority in favor of one claim over another, and that all claims should be satisfied *pro rata* if the money arising from the sale of the property should be insufficient to pay all in full. From that judgment, and an order denying a new trial, the defendant Norton appeals.

One reason urged for a reversal of the judgment and order is, that the finding as to the notice of lien filed by the plaintiffs Smith & Waite, that it was "in due form,

as required by law," is not sustained by the evidence. It is said, in support of this contention, that the notice of lien required to be filed under section 1187 of the Code of Civil Procedure, in order to preserve the lien, sets out that the materials to be furnished and labor to be performed were to be paid for on the basis of what they were reasonably worth, and that the proof shows that they were furnished at an agreed contract price, and that therefore the evidence disproves the contract set out in the notice, and as the notice was fatally defective in this respect, no lien attached that could be enforced. The notice does state the contract, as contended for by the defendant. The evidence as to the matter is that given by F. L. Smith, one of the lien claimants, as follows: "We contracted with defendant Helm to furnish this material. There was no special contract, except as to the price of the material. We gave him a list of what we would furnish a certain amount of material for. We furnished Helm with a list of the materials and prices, and most of the materials were furnished by us according to that list. Question. Did your firm agree to furnish all the material furnished in your line for $658? Answer. No, sir; we did not, — most emphatically. The list we furnished to Mr. Helm for that amount of material was taken from a portion of the plans, from figures that Mr. Laird made on his plans that it would require so much, — so many feet of each kind of material, — and we gave him figures on that, and furnished it to him at the figures we gave him; but we did n't give him the figures for the whole amount of material and all other things; but, of course, we charged in the same proportion, as near as we could. The materials were reasonably worth the amount charged." From this it appears that a certain portion of the materials were furnished upon a special contract as to price, and that the balance were furnished on the basis of a *quantum meruit.* Inasmuch as this shows the finding to be

wrong in stating that the notice of lien complied with
section 1187 of the Code of Civil Procedure, giving the
terms of the contract under which the materials were
furnished, at least so far as a part of them are concerned,
the contention of the defendants seems to be sound.
Neither is the finding supported by the evidence that
the materials furnished or work done by these plaintiffs
were upon the agreement of the defendant Helm, with
the knowledge of Norton, to pay for them all at what
they were reasonably worth.

With reference to the claim of Schwartz, Beebe & Co.,
it is objected that the evidence shows that their notice
of claim of lien was not in legal form, as shown by their
evidence, and therefore the finding that it is in due form
is unsupported by evidence, as well as the finding that
the contract was to furnish materials, etc., for what they
were reasonably worth.   It is further asserted that the
claim of lien is at variance with the contract proved, in
that the former states that the materials were furnished
to Helm, and that claimants were employed by both
Helm and Norton to furnish the same, while the evi-
dence of one of the plaintiffs is: " I made a contract about
this lumber with defendant Norton about June 20th.
The contract was made in this way: I met defendant
Norton, and we talked over the prices of lumber and the
discount for cash, and that was the only time I ever had
any conversation with him about it; and he said he was
going to build a house, and wanted to know what the
price of lumber would be.   I had no conversation with
defendant Helm about it.   I never transacted any busi-
ness with him about it.   William Evans came after the
lumber.   He brought the bill there.   I gave no particular
time for payment.   It was to be a discount for cash.   The
amount charged in the notice of lien is the reasonable
value of the lumber furnished; such as we sell it for in
the market in our lumber-yard.   About August 2d, I
went to defendant Norton for payment.   He said I must

get an order from defendant Helm. I got an order for eleven hundred dollars, and Norton paid it. I then talked with Norton about the balance of the bill. He said he and I would deal about that bill. I said I had nothing to do with Helm, and had said nothing to him about it, and he said he and I would arrange about the payment of that bill, and pay the bill up in full, and the percentage be fixed afterwards. Since we filed the lien he said he thought I had better take what I could legally get. When I was furnishing the material, I heard that Helm had the contract."

From this it seems that Norton did make a contract with the plaintiffs to furnish the material; that it went into the building that Helm, the contractor, was erecting for Norton, and for which he got it from the material-men; and that Helm gave orders to pay for it drawn on Norton, which were paid. Thus it would seem that, practically, the materials were furnished to Helm; that Norton originally contracted for them; and Helm, by giving an order for the payment, admitted his liability to pay for them. How any injury could result to Norton from this kind of a variance we do not perceive, and therefore the statement of claim, so far as it mentions the name of the person by whom the plaintiff was employed, or to whom he furnished the materials, was substantially the same as shown in evidence. As to the terms and conditions of the contract, we think there is no substantial variance between the statement in the notice of claim of lien and the evidence.

As to the Reed, Smith & Co. claim, it is said by appellant that the contract as set out in the claim of lien is different from what the proof shows it to be, and as a consequence, the findings as to the nature of the contract, and that it was in due form, are unsupported by the evidence. In the notice, the contract as to price is, that it was " the usual price, and what said materials were reasonably worth at their place of business"; that is, at

the place of business of the plaintiffs. In that connection his counsel argues as follows: " In the notice of lien it is alleged that the price agreed upon was 'the usual price, and what said materials were reasonably worth at their place of business.' There is not a word in the testimony to support the allegation that there was such an agreement. The testimony is simply silent upon this point. Nor is there any testimony as to what the materials were reasonably worth at the place of business of Reed, Smith & Co. Section 1187 of the Code of Civil Procedure requires the notice of lien to state the terms, time given, and conditions of the contract. This means the terms, time, and condition expressly agreed upon. (*Jewell* v. *McKay*, 82 Cal. 144.) If no terms, time, or conditions were agreed upon, the notice need state none. (*Jewell* v. *McKay*, 82 Cal. 144.) But when the notice states that terms, time, or conditions were agreed upon, then the proof must come up to the statement. The notice of lien states that it was agreed that payment should be at the time of delivery; no testimony that there was such an agreement." The statement in the claim appears to be nothing more than that the materials were bought and furnished on the basis that they were to be paid for on delivery at what they were reasonably ,worth. This would be, in effect, giving the plaintiffs a right to recover on a *quantum meruit.* And while it may have been unnecessary to set out such a contract in the notice of claim of lien under the decision just cited, we do not think that such decision announces the principle that where such a course is pursued the party shall not be held to have filed a notice of claim based upon a *quantum meruit.* The evidence being that such materials as were asked to be furnished were furnished and delivered upon the order of Helm and Norton and Laird, the architects for Norton, that they were used in the building of Norton, and that they were reasonably

worth $939.90, and no part of that sum has been paid, we can see no force in the defendants' contention on the point.

It is further argued, in reference to this claim, that there is a variance of a fatal nature between the notice of claim and the complaint; that the notice treats the contract between the contractor and the owner as valid; that it does not allege that the contract or a memorandum thereof was not filed, and in this respect it differs from all the other notices of lien; that the complaint treats the contract as void for want of filing; that in the notice of lien it is alleged that Helm, the contractor, purchased the materials both as contractor and agent of Norton; that in the complaint it is alleged that he purchased as agent only. The point made seems to have been decided adversely to the contention made here, in *Davies Henderson Lumber Co.* v. *Gottschalk*, 81 Cal. 641–646.

We perceive no merit in the points made of the same tenor as to the C. H. Reed & Co. claim, looking at the record and the evidence, particularly as to the value of the materials furnished, and the way in which they were purchased and furnished.

As to the L. H. Simmons case, it is said that the complaint does not state a cause of action; that it does not state that the materials were used in the building. There was no special demurrer filed to this complaint, and the court found that the materials were used in the building, and the complaint set out that "said firm sold and delivered to said Norton certain hardware and building material to be used in the erection and construction of said building, and affixed and attached thereto." If this hardware and building materials were affixed and attached to the building, they must be said to have been used in the erection and construction of it. Under the circumstances, we think the complaint was sufficient. There is nothing in the cases cited by the appellants to

sustain their contention. (*California Powder Works* v. *Blue Tent etc. Mines*, 22 Pac. Rep. 391; *Silvester* v. *Mine Co.*, 80 Cal. 510.) There is no substantial variance between the notice of lien and the evidence as to the contract in this case.

It is contended, further, that the J. M. Huyck complaint does not state a cause of action, in that it omits to state that the building was completed. There is nothing in the point, as it is fairly inferable from the language of the complaint at folio 94 that the building was completed when the notice of lien was filed.

As to the point made of the variance between the actual contract made with Knight and the statement of the same in the notice of lien, it appears that it is well taken. The notice sets out " that the agreement between him and said Norton was, that he was to be paid for said labor done and furnished at what it was reasonably worth, to be paid for when the work ceased." The evidence is, on the part of Knight, that he had an express contract with Norton to do painting for $250; that he did a portion of it, and stopped because Norton refused to pay him. He says: " My contract was to furnish all the material and do all the painting for $250." The other points made, that there is a variance between the notice and the contract proved, as to the name of his employer, and that the complaint does not show that the building was completed when the notice of lien was filed, are without force.

The point seems to be made upon the Mitchell complaint that it is not alleged therein that the contract for furnishing the materials, etc., was in writing or filed for record, and that as it was over one thousand dollars it was void. Mitchell was a mere subcontractor and material-man, and there is nothing in section 1183 of the Code of Civil Procedure requiring a contract of the kind he had to be in writing or recorded; and even if the contract between Norton and Helm had been void, there

was no necessity for Mitchell to have had any written contract or to have recorded it.

The defendants argue that the findings are conflicting as to the completion of the building at the time the notices of lien claims were filed, and that the evidence shows that they were prematurely filed. We do not think either point well taken. The contractor had ceased to work upon the building for thirty days on December 10, 1889, before the lien claims were filed, and this is held to entitle such claimants as are here involved to file their notices of lien as they did. (*Kerckhoff-Kuzner Mill and Lumber Co.* v. *Olmstead*, 85 Cal. 84.)

But we do not think that the finding of the court that the work was commenced before the contract or a memorandum thereof was filed in the recorder's office of the proper county is sustained by the evidence. The memorandum was filed on the 25th of June, at 10:30 o'clock, A. M. While even admitting the plaintiffs' view of the testimony to be correct, which is doubtful, that any work at all was commenced before this filing, it was of the most trivial nature, and was not commenced until, at the earliest, 8 or 8:30, A. M., of the same day. It should be held, under the evidence, that the filing of the memorandum was before the work was actually commenced.

The objection urged that the contract as made is defective, in that the time specified for payments thereunder is not in accordance with section 1184 of the Code of Civil Procedure, which reads thus: " No part of the contract price shall, by the terms of any such contract, be made payable, nor shall the same, or any part thereof, be paid in advance of the commencement of the work; but the contract price shall, by the terms of the contract, be made payable in installments, at specified times, after the commencement of the work, or on the completion of specified portions of the work, or on the completion of the whole work; provided, that at least twenty-five per cent of the whole contract price shall be made payable

at least thirty-five days after the final completion of the contract. . . . . In case such contracts . . . . do not conform substantially to the provisions of this section, the labor done and the materials furnished by all persons, except the contractor, shall be deemed to have been done and furnished at the personal instance and request of the person who contracted with the contractor, and they shall have a lien for the value thereof." The contract provided: " For all the material, and for the construction of said building, as herein provided, said Norton agrees to pay said Helm the aforesaid sum of five thousand five hundred dollars, as follows: 1. Upon the written order of said Helm, he [Norton] will pay the material-man for materials furnished as soon as the same is actually worked into the building, and whether the same be furnished directly to said Helm or to his subcontractors; 2. Upon the written order of said Helm, he [Norton] will pay the mechanics and laborers upon said building at the end of every week for work actually done, and whether such laborers and mechanics be hired directly by said Helm or by his subcontractors; 3. When all the material and labor is paid for as aforesaid, then said Norton will pay said Helm the balance of said contract price; 4. Provided, that said Norton may retain twenty-five per cent, ($1,375) of said contract price until thirty-five days shall have expired after final completion of said contract." We think these payments, to be made through Norton to the material-men when their material was used in the building, and to the mechanics and laborers weekly, were specific enough as to time and amounts to comply substantially with the statute.

In their opening brief, the respondents claim that in order for the memorandum to be valid, there must have been filed in the recorder's office the plans and specifications for the building. But this contract was made after the amendment of 1887 to section 1183 of the Code of Civil Procedure, and in that amendment it is not speci-

fied that any plans or specifications shall be filed, nor is it necessary to a proper memorandum that they should be.

In their reply brief they press this point no further, but claim that the memorandum filed is insufficient because it does not specify the time mentioned in the contract for making payments, and is not a memorandum of the contract as to payments. The memorandum, among other things, contains this: "Said Helm to be paid five thousand five hundred dollars for all work, labor, and material; three fourths thereof payable in installments as work progressed. (Said Norton to pay the material-men, laborers, and mechanics upon the written order of said Helm; laborers and mechanics to be paid weekly during the progress of the work, until said three fourths is exhausted.) The other one fourth payable in thirty-five days after the final completion of the contract." We do not see but what this is a substantial statement of "the amounts of all partial payments, together with the times when such payments shall be due and payable," as set out in the contract, and required to be in the memorandum, under section 1183 of the Code of Civil Procedure. The point is also made that certain of the verifications to some of the claims of lien are insufficient. But we see no merit in it; it is only required that the verification should state that the claim is true, without setting out the particulars which the law requires to be contained in the body of the claim. (*Arata* v. *Mine Co.*, 65 Cal. 342.)

This disposes of all the material questions argued on the appeal, and it appears that the defendant Norton did not retain for thirty-five days after the final completion of the work and contract, and pay it over to those entitled thereto, twenty-five per cent of the contract price of five thousand five hundred dollars, and that he is responsible to that extent, but no further, to those who make good their claim to it; but the judgments rendered

are for more than that amount.   For the reasons heretofore stated, we advise that the judgment and order be reversed, and the cause remanded for a new trial.

VANCLIEF, C., and BELCHER, C., concurred.

PER CURIAM. — For the reasons given in the foregoing opinion, the judgment is reversed, and the cause remanded for a new trial.