[Sac. No. 1577. In Bank.—March 13, 1908.]

## WOOD, CURTIS & COMPANY, Respondent, v. EL DORADO LUMBER COMPANY et al., Appellants.

MECHANICS' LIENS—CONSTRUCTION OF RAILROAD—LETTING OF HORSES AND HARNESS TO CONTRACTOR—LESSOR NOT ENTITLED TO LIEN.—One who has let horses and harness belonging to him to one who has contracted to build a railroad, at a stipulated price per month, the contractor having full control thereof during the hiring and having employed and paid the drivers thereof, cannot be held to have bestowed any labor upon the railroad, or to be entitled to

enforce any lien thereon, as against the owner, under section 1183 of the Code of Civil Procedure, as a subcontractor.

Id.—Labor Enhanced by Use of Appliances—Rent of Appliances.— Though, in proper cases, the value of labor may be enhanced by the use of tools and appliances, and the laborer may claim a lien for said value; yet this rule has no application where one merely -rents appliances to another who labors on the structure, in which case, it can never be said that he has himself bestowed labor on that structure within the meaning of our law.

APPEAL from a judgment of the Superior Court of El Dorado County, and from an order denying a new trial. N. D. Arnot, Judge.

The facts are stated in the opinion of the court.

W. J. Bartnett, Chas. A. Gray, and Chas. A. Swisler, for Appellants.

L. T. Hatfield, for Respondent.

HENSHAW, J.—The facts involved in this appeal, briefly stated, are as follows: On February 17, 1904, the defendant and appellant herein, the El Dorado Lumber Company, entered into a contract with the defendants Carney, Roy & Carney for the construction of a single-track railroad, upon a private right of way from North Placerville to its storage yards in El Dorado County. Thereafter, and during the progress of construction work upon said right of way, the plaintiff corporation let to the firm of Carney, Roy & Carney, fifty-three head of horses, with their harness, at the rate of ten dollars per month for each horse and harness. An examination of the record shows that these horses were used by Messrs. Carney, Roy & Carney in the course of the construction work, and that the drivers of the horses were hired and paid for by them. Suit was brought in the superior court of El Dorado County, and on October 31, 1904, the default was entered of defendants Edward Carney, E. J. Roy, and Edward Carney, Jr., and the case was tried as to the defendant corporation.

An examination of the record shows that there was no conflict of evidence upon the proposition that the transaction between plaintiff and the contractors, Carney, Roy & Carney,

was simply a letting by plaintiff of the horses and harness to the contractors for the doing of this work at a stipulated price per month for each horse. The contractors had full control of the horses during the time of the hiring, and employed and paid the drivers thereof. So far as the findings may be construed otherwise, they are unsupported by the evidence. Upon the theory that in the use by the contractors of plaintiff's horses and harness in the work of constructing the railroad plaintiff had performed labor upon the railroad, the trial court found it to be entitled to a lien on the railroad for the amount due from the contractors for such hiring.

The question, then, which the trial court answered in favor of plaintiff is: Did plaintiff by this letting of its horses at a stipulated price per month "bestow labor" upon the work so as to entitle it to a lien under section 1183.of the Code of Civil Procedure? Respondent contends that upon the reasoning, if not upon the direct authority, of *Macomber* v. *Bigelow*, 126 Cal. 9, [58 Pac. 312], the trial court was clearly right in its ruling. But in *Macomber* v. *Bigelow* this court was construing the provisions of the Mechanics' Lien Law with reference to the right to a lien of a subcontractor who had not actually labored himself upon the work, but had "bestowed" upon it the labor of his servants and employees, and it was held that such a subcontractor brought himself within the purview of the statute. So far, and no further, *Macomber* v. *Bigelow* went. We are asked here to hold (since to uphold the ruling of the trial court it must be so held) that one who merely lets, hires, or rents tools, implements, or machinery of any kind to one employed upon the work becomes thereby a subcontractor and entitled to a lien for the value of the use of such tools, implements, and machinery as he has let or leased. Yet, certainly, the plaintiff was in no sense a subcontractor. He occupied no contractual position whatsoever touching the work. He had merely turned over to the contractor, under a contract of hiring, certain personal property which the contractor himself used upon the work. The fact that the personal property which was so turned over consisted of horses and their harness should not be allowed to cloud the issue. The horses, as horses, were no more entitled to liens than were the harnesses themselves. Each and both together were but convenient appliances for

the doing of specific work. In the ultimate analysis there is
no difference in principle, whether draying is done by horses
and wagons or by automobile trucks; whether grading is done
by horses and scrapers or by traction engines and steam pad-
dies. One and all are in their essence but tools and machinery.
This being so, if the ruling for which respondent contends
is the correct one, it must result that if A leases to B a derrick
or hoist for use upon the buildings which B is constructing,
A will have a lien upon each of those buildings for the value
of the use of the derrick. Or, in still simpler form, if a car-
penter lets to a fellow-carpenter his chest of tools for fifty
cents a day, the former will have a lien upon every building
upon which the latter works and uses the rented tools. The
illustration reduced to its simplicity shows the untenableness,
if not the absurdity, of the contention. Giving to the law
its broadest and most beneficent construction, it can never
be said that one who merely rents appliances to another who
labors upon a structure has himself bestowed labor upon that
structure within the meaning of our law. In this, of course,
there is no denial, but a distinct affirmance of the fact that,
in proper cases, the value of labor may be enhanced by the
use of tools and appliances, and, in such cases, a lien may
be properly given for such value, as in *West Coast Lumber
Co.* v. *Newkirk,* 80 Cal. 280, [22 Pac. 231], and in *McClain*
v. *Hutton,* 131 Cal. 132, [61 Pac. 273, 63 Pac. 182]. Upon
the other hand, reference may be made to *Adams* v. *Burbank,*
103 Cal. 646, [37 Pac. 390], where it was held that a teamster
who had been employed by the brick men to haul brick for
them, who had no contract with the contractor and owed
him no liability, had not performed labor upon the building
and was not entitled to a lien. Unquestionably the brick men
would have been allowed a lien in a proper case for this cart-
age as a part of the cost of the material.

The case of *Clark* v. *Brown,* 141 Cal. 93, [74 Pac. 548],
relied upon by appellant, has not been overlooked. *Clark* v.
*Brown* was an action for a lien upon a threshing-machine,
brought under the act which provided for a lien for the
wages of persons employed as laborers. It was there held by
the trial court, and its ruling approved by this court, that the
law limited the lien to the wages of the persons employed,
and did not and could not include the value of the services

of horses rented to the owner of the machine and used by him in its work. In principle the case is identical with the one at bar. The distinction which is sought to be drawn between the two rests upon the broader language of the Mechanics' Lien Law. But even that language, as we have said, does not warrant the award of a lien in such a case.

For the foregoing reasons the judgment and order denying a new trial are reversed and the cause remanded.

Angellotti, J., Shaw, J., Sloss, J., and Lorigan, J., concurred.

Rehearing denied.