[No. E023829. Fourth Dist., Div. Two. Oct. 11, 2000.]

IVY TRUCKING, INC., Plaintiff and Appellant, v.
CRESTON BRANDON CORPORATION et al., Defendants and
Respondents.

**COUNSEL**

Bonneville & Cramer and Michael Cramer for Plaintiff and Appellant.

Law Offices of John C. Goodman and John C. Goodman for Defendants and Respondents.

**OPINION**

**GAUT, J.**—Plaintiff Ivy Trucking, Inc. (Ivy), appeals from a judgment rendered in favor of defendants Heritage Engineering Construction, Inc. (Heritage), Vigilant Insurance Company (Vigilant), and Ulico Casualty Company (Ulico).

Ivy was hired by a subcontractor, Creston Brandon Corporation (Creston Brandon), to haul fill dirt to a Caltrans (Department of Transportation) freeway project under construction by Heritage, the general contractor. The trial court denied Ivy recovery based on the general rule of long standing that one who transports construction materials to a building site cannot assert a mechanic's lien because the transportation services are not labor or materials. (*Wilson v. Nugent* (1899) 125 Cal. 280, 284 [57 P. 1008], citing *Adams v. Burbank* (1894) 103 Cal. 646, 651 [37 P. 640].)

We reverse the judgment, relying on an equally venerable exception to the general rule, an exception that applies when the transportation services are rendered under contract with a statutory agent of the owner. (Civ. Code, § 3110[1]; *McClain v. Hutton* (1900) 131 Cal. 132, 142-143 [63 P. 182].)

### 1. *Factual and Procedural Background*

Heritage was an engineering company hired by Caltrans to build a sound-wall along Interstate 10 in Montclair. Heritage subcontracted with Creston Brandon to supply backfill dirt along the soundwall. Creston Brandon then hired Ivy to obtain the dirt from a borrow pit and to transport it to the site of the soundwall.

Ivy truck drivers, using Ivy trucks, drove to the borrow pit to collect loads of fill dirt that they then delivered to the site of the Montclair soundwall. As described in the parties' settled statement: "After the dirt was dumped, it was being placed as backfill against the base of the Montclair Soundwall, with use of equipment owned and operated by others."

Creston Brandon never paid Ivy for its work. So Ivy served a preliminary notice on Caltrans and then a stop notice. (§ 3181.) To obtain release of the stop notice, Heritage filed a release bond (§ 3196) with Ulico as the bond surety. Heritage also filed a statutory payment bond (§ 3247) with Vigilant as the bond surety.

The trial court ruled that Ivy was not a statutory claimant and not entitled to recovery because it did not provide labor or materials to the Caltrans project. Instead, all Ivy provided was delivery of dirt it did not own.

We disagree with the trial court's ruling. As discussed below, Ivy could recover because of its contract with Creston Brandon, a subcontractor and statutory agent of Caltrans, the owner.

### 2. *Discussion*

The parties agree that the facts in this matter are not disputed and that this court independently reviews the lower court's judgment for an error of law. (*Industrial Asphalt, Inc. v. Garrett Corp.* (1986) 180 Cal.App.3d 1001, 1004 [226 Cal.Rptr. 17].)

On a public works project, in determining whether a person or entity is a claimant entitled to enforce rights arising from a stop notice, we must have

---

[1]All further statutory references are to the Civil Code.

recourse to section 3110. (§ 3181.) Section 3110 provides: "Mechanics, materialmen, contractors, subcontractors, lessors of equipment, artisans, architects, registered engineers, licensed land surveyors, machinists, builders, teamsters, and draymen, and all persons and laborers of every class performing labor upon or bestowing skill or other necessary services on, or furnishing materials or leasing equipment to be used or consumed in or furnishing appliances, teams, or power contributing to a work of improvement shall have a lien upon the property upon which they have bestowed labor or furnished materials or appliances or leased equipment for the value of such labor done or materials furnished and for the value of the use of such appliances, equipment, teams, or power whether done or furnished at the instance of the owner or of any person acting by his authority or under him as contractor or otherwise. For the purposes of this chapter, every contractor, subcontractor, sub-subcontractor, architect, builder, or other person having charge of a work of improvement or portion thereof shall be held to be the agent of the owner."

■ In some instances, transportation of materials does not constitute labor, services, or materials within the meaning of section 3110. A party who, at the behest of a supplier, delivers brick to a construction site cannot assert a lien claim against the owner. (*Adams v. Burbank, supra,* 103 Cal. at pp. 648, 651.)

Exceptions occur to the above rule when: (1) the one performing the hauling owns the materials and the cost of hauling is part of the cost of the materials (*Consolidated Lbr. Co. v. Bosworth, Inc.* (1919) 40 Cal.App. 80, 94-95 [180 P. 60]; *Hayward L. & I. Co. v. Ross* (1939) 32 Cal.App.2d 455, 461 [90 P.2d 135]); (2) the hauler participates in the work of improvement (*Contractors Dump Truck Service, Inc. v. Gregg Constr. Co.* (1965) 237 Cal.App.2d 1, 4-5 [46 Cal.Rptr. 738]); or (3) the hauler is hired by an agent of the owner (*McClain v. Hutton, supra,* 131 Cal. at pp. 142-143).

The first exception does not apply because Ivy did not own the dirt it delivered. In the *Contractors Dump* case, the second exception allowed a motor transportation broker to assert a mechanic's lien in a situation where the broker had arranged to rent trucks for transportation and dumping and to rent equipment for compacting fill dirt. Ivy tries to argue that the second exception applies because it supplied specialized equipment, bottom-dump trucks, "to assist in the construction of the SOUNDWALL." But that contention is not supported by the record. According to the parties' stipulated statement, all Ivy did was to deposit the dirt. Other workers, using other equipment, constructed the backfill with the dirt. Therefore, Ivy did not participate in the work of the improvement.

Instead, the third exception permits Ivy a basis for recovery. In the *Adams* case, the court held a person employed by a brick supplier to deliver brick

could not have a lien, in part because he "had no connection with the contractor, who owed him no liability." (*Adams v. Burbank, supra,* 103 Cal. at p. 651.) In contrast, the court in the *McClain* case held that a person employed by an owner's agent to haul bricks for the construction of a building was entitled to a lien for his services. The difference between *Adams* and *McClain* is that, in *Adams*, the person delivering brick was hired by the brick supplier and, in *McClain*, the one performing the hauling was hired by the owner's immediate agent.

In the present case, Ivy was not hired by the dirt supplier. Ivy was hired by Creston Brandon, a subcontractor on the Caltrans project. Section 3110 has expanded the definition of agent to include every subagent: "For the purposes of this chapter, every contractor, subcontractor, sub-subcontractor, architect, builder, or other person having charge of a work of improvement or portion thereof shall be held to be the agent of the owner."

Therefore, if a claimant has contracted with an owner's statutory agent the claimant is entitled to lien rights. (*Borello v. Eichler Homes, Inc.* (1963) 221 Cal.App.2d 487, 496 [34 Cal.Rptr. 648].) A subcontractor may confer lien rights on a lower-tier subcontractor or material supplier. (*Bumb v. Petersmith Controls, Inc.* (9th Cir. 1967) 377 F.2d 817, 818.) In this case, because Ivy contracted to haul dirt for Creston Brandon, which as a subcontractor was the statutory agent of Caltrans, Ivy was entitled to enforce its rights arising out of the stop notice.

This result accords with the policy of interpreting the lien laws liberally to accomplish their intended purpose of preventing unjust enrichment at the expense of unpaid workers. (*Primo Team, Inc.* v. *Blake Construction Co.* (1992) 3 Cal.App.4th 801, 812 [4 Cal.Rptr.2d 701]; *Industrial Asphalt, Inc. v. Garrett Corp., supra,* 180 Cal.App.3d at p. 1006.) Ivy delivered the fill dirt that was used to construct backfill for the Montclair soundwall. Ivy should be entitled to pursue its remedies under the stop notice.

### 3. *Disposition*

We reverse the judgment and order the prevailing party to recover its costs.

Ramirez, P. J., and McKinster, J., concurred.

Respondents' petition for review by the Supreme Court was denied January 10, 2001.